<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHAQUAN PRIDGEN<br><br>    Plaintiff,<br><br>    v.<br><br>AMAZON.COM SERVICES LLC<br><br>    Defendant. | No. 25cv7589 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Shaquan Pridgen proceeds *pro se* and brings four counts against Defendant Amazon.com Services LLC ("Amazon") under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–213 ("ADA"). D.E. 1 ("Complaint" or "Compl."). Amazon moves to dismiss part of Count I and all of Counts II, III, and IV from Pridgen's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 19-1[1] ("Motion to Dismiss" or "MTD."). Pridgen opposes Amazon's Motion to Dismiss. D.E. 21 ("MTD Opposition"). Amazon replies in support of its Motion to Dismiss. D.E. 24.

Separately, Pridgen also moves for a preliminary injunction seeking to enjoin Amazon from taking any payroll action without judicial review and to compel Amazon to refund certain wages and to audit Plaintiff's payment history. D.E. 33 ("Motion for a Preliminary Injunction" or "PI Mot.") at 5. Amazon opposes Pridgen's Motion for a Preliminary Injunction. D.E. 41. Pridgen replies in support of his Motion for a Preliminary Injunction. D.E. 45.

---

[1] For convenience, the Court refers to the memorandum of law that Amazon filed in support of its motion to dismiss as its "Motion to Dismiss." Amazon filed its notice of motion at D.E. 19.

The Court decides the Motion to Dismiss and the Motion for a Preliminary Injunction without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the Court will **GRANT** Amazon's Motion to Dismiss, **DISMISS** part of Count I and all of Counts II, III, and IV of Pridgen's Complaint *without prejudice*, and **DENY** Pridgen's Motion for a Preliminary Injunction.

## I.    BACKGROUND

### A.    Factual Background[2]

Pridgen began working for Amazon in 2017.  Compl. ¶ 1.  After experiencing a "clinically diagnosed mental health collapse" in August 2024, Plaintiff took medical leave from his job at Amazon and collected short term disability pay.  *Id.* ¶¶ 2, 5.  Pridgen alleges that the working conditions at Amazon triggered his mental breakdown.  *Id.*  Pridgen visited a behavioral health physician who diagnosed him with depression and attention deficit-hyperactivity disorder.  D.E. 19-2, Ex. B ("Health Assessment") at 21.[3, 4]  The physician found that Pridgen's general behavior

---

[2] For purposes of the Motion to Dismiss, the Court accepts the factual allegations of the Complaint as true and draws all inferences in the light most favorable to Pridgen.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document integral or explicitly relied upon in the complaint may be considered without converting the motion into one for summary judgment."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Here, Pridgen's Complaint includes an exhibit index for exhibits he did not file with his Complaint.  *See* D.E. 1-2.  Instead, he represented that they were "available for inspection or submission upon request."  *Id.*  Pridgen references some of these exhibits in his Complaint.  Those exhibits include at least:  (1) the Health Assessment; and (2) Pridgen's two charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC").  *See, e.g.*, Compl. ¶¶ 21, 27–30,  Amazon, through an affidavit, has provided a sworn copy of the missing Health Assessment and charges of discrimination.  D.E. 19-2 at 1–2.  The Court may therefore consider these documents.

[4] The Court refers to the page numbers generated by the Court's Case Management / Electronic Case Files system ("CM/ECF") in its citations to the exhibits filed within D.E. 19-2.

functioning, language and thought functioning, emotional functioning, and cognitive functioning were impaired. *Id.* The physician indicated that Pridgen's sensory, mobility, and medical capabilities would suffer whenever Pridgen's medicine wore off and that Pridgen's executive functioning and mental health capabilities were diminished in some part. *Id.* at 24.

Pridgen's physician specified that Pridgen would not be able to work more than forty hours in one week nor more than ten hours in one day. *Id.* at 24–25. Pridgen's physician also indicated that Pridgen would need an extended break period during work hours for up to sixty minutes and that he would need three intermittent absences per month. *Id.* Pridgen's physician did not indicate that any other limitations on Pridgen's ability to work were needed. *See id.* at 24–26.

Pridgen returned to work in January 2025 with the approved accommodations. *See* Compl. ¶ 6. His approved accommodations provided for: a maximum of ten hours for any shift, a maximum of forty hours for any work week, access to three intermittent absences per month, and an additional hour-long break during work hours. *Id.* Pridgen's workload included physical labor, floor presence, documentation, and audit requirements.[5] *Id.* ¶ 8. According to Pridgen, however, Amazon did not reduce his workload in a manner commensurate with the reduction in his time working. *Id.*

Within a manner of days, Pridgen alleges he received a formal disciplinary warning. *Id.* ¶ 10. Pridgen thereafter requested some kind of investigation from Amazon leadership and an assessment of different employees' workloads. *Id.* ¶¶ 11–14. Pridgen claims that no investigation or assessment were ever performed. *Id.*

---

[5] Pridgen does not provide context for what these responsibilities entailed or how they subjected Pridgen to increased productivity expectations.

On February 5, 2025, Amazon forcibly removed Pridgen from the workplace and placed him back on medical leave based on an "accommodation conflict." *Id.* ¶ 15.  Pridgen alleges that this second leave period was misclassified by payroll and erroneously combined with his prior short term disability period.  *See id.* ¶¶ 16, 40.  Due to this error, Pridgen experienced a lapse in pay and benefits.  *Id.* ¶ 17.  He was also audited by the IRS.  *Id.*  Pridgen alleges that this error "severely destabilized his home life, credit, and ability to pay for ongoing [medical] care."  *Id.* ¶ 18.  At some point, Amazon approved Pridgen for medical leave through July 16, 2025.  *See id.* ¶ 21.

Pridgen attempted to resolve his issues with Amazon internally but after failing to reach a resolution, he filed a charge of discrimination with the EEOC on February 28, 2025.  *See* Compl. ¶ 21; D.E. 19-2, Ex. D ("Charge of Discrimination") at 34.  In his Charge of Discrimination, Pridgen alleged that Amazon:  (1) failed to provide him with reasonable accommodations; (2) imposed on him an excessive and unrealistic workload; (3) retaliated against him for reporting his workplace concerns; (4) caused him emotional distress; (5) subjected him to unsafe working conditions, which resulted in a car accident; and (6) caused strain to his family relationships and quality of life.  *Id.* at 32–33.

Pridgen then amended his charge of discrimination with the EEOC on April 21, 2025.  D.E. 19-2, Ex. E ("Amended Charge of Discrimination").  In his Amended Charge of Discrimination, Pridgen alleged again that Amazon retaliated against him and failed to provide him with reasonable accommodations.  *Id.* at 37.  Pridgen also provided new claims alleging that Amazon: (1) subjected him to a hostile work environment; (2) constructively discharged him; (3) financially sabotaged him; (4) caused him to suffer a new mental health breakdown; and (5) engaged in bad faith behavior while mediating his prior claims with the EEOC.  *Id.* at 37–39.

4

Pridgen states that the EEOC provided him with a notice of his right to sue, D.E. 1-2, but he did not attach it to his Complaint or his MTD Opposition.  Nor did Amazon provide a copy of it with their Motion to Dismiss (although they do not contest its existence).  *See* MTD at 9.  To the extent that Pridgen has filed his notice of right to sue elsewhere on the docket amongst his many disjointed filings, this Court cautions Pridgen that Judges "are not pigs searching for truffles and are unwilling to search through the massive record that has been developed in this case to find evidence of . . . alleged violations."  *United States v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10, 2008).  Any document germane to Pridgen's pleadings should be submitted together *with* those pleadings.[6]  Accordingly, to the extent Pridgen has filed a copy of his notice to sue somewhere, the Court cannot consider it because it was not included with the parties' relevant filings.

### B.      Procedural History

Pridgen filed his Complaint against Amazon on June 4, 2025.  Compl.  Pridgen's Complaint asserts four counts.[7]  Count I is a retaliation claim brought pursuant to 42 U.S.C. § 12203.  Compl. ¶¶ 24–26.  Count II is a failure to provide reasonable accommodation claim

---

[6] In his Motion for a Preliminary Injunction, Pridgen represents that he "is preparing a master indexed Exhibit Log, which will include all exhibits filed to date (A through AO), and respectfully requests that the Court consider this reference log for the purposes of all pending and future motions . . . ."  PI Mot. at 3.  Plaintiff may not treat the Court's docket as a repository for the discovery he wishes to produce and then expect the Court to consider it all in response to every future filing.  Pridgen must be specific, must provide citations, and must organize his filings.  In addition, Pridgen may not prematurely file documents with notice that at some point in the future, he will provide evidence.  The Court will consider such filings untimely and incomplete.

[7] In his MTD Opposition, Pridgen mentions the New Jersey Law Against Discrimination and the New Jersey Conscientious Employee Protection Act.  MTD Opp'n at 2–3.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  The Court therefore only considers those claims that Pridgen asserts in his Complaint.

brought pursuant to 42 U.S.C. § 12112(b)(5)(A). *Id.* ¶¶ 27–30. Count III is a hostile work environment claim brought pursuant to 42 U.S.C. § 12112(a). *Id.* ¶¶ 31–33. Finally, Count IV is a disparate impact claim brought pursuant to 42 U.S.C. § 12112(b)(3) and for which Pridgen seeks to certify a class. *Id.* ¶¶ 34–37.

Since filing his Complaint, Pridgen has submitted various motions and filings requesting emergency relief, discovery-related conferences, and to supplement the record. *See, e.g.*, D.Es. 5 ("Notice of Preservation Correspondence"), 9 ("Letter Motion Requesting Early Judicial Conference"), 11 ("Motion for Protective Order"), 25 ("Emergency Notice of Retaliatory Leave Extension and Imminent Harm"), 28 ("Notice of Ongoing Harm and Emergent Intent to Seek Preliminary Injunctive Relief"). This Court admonished Pridgen and instructed him that his attempts to improperly supplement the record through haphazard filings were improper and would not be considered. D.E. 40 (citing Fed. R. Civ. P. 15(a)). Accordingly, this Court denied many of Pridgen's inappropriate and premature motions and requests but left pending his Motion for a Preliminary Injunction and Amazon's Motion to Dismiss. *See* D.E. 40. The Court decides those motions now.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure Rule 8

Federal Rule of Civil Procedure 8 requires a complaint to provide "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each allegation must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The allegations must also "give the defendant notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

At the pleading stage, these burdens are "minimal." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Frazier v. Se. Pa. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986), *abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intel. Coordination Unit*, 507 U.S. 163 (1993)).  And while a *pro se* plaintiff's pleadings are liberally construed, Rule 8's requirements are nevertheless binding.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 329, 246 (3d Cir. 2013).

**B.    Federal Rule of Civil Procedure Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Cnty. of Allegheny*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although there is no "'probability requirement,'" plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The allegations must amount to "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### C.      Federal Rule of Civil Procedure 65

A preliminary injunction is "'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). Such extraordinary relief should be granted only if a party shows:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Id.* (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The first two factors are particularly critical and must be met before a preliminary injunction may issue. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 , 179 (3d Cir. 2017). If these gateway factors are met, courts may then consider the remaining two factors and determine whether "in its sound discretion . . . all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

### III.    DISCUSSION

Amazon moves to dismiss Counts II, III, and IV in full, and Count I to the extent Count I is premised upon constructive discharge. Amazon also moves to dismiss Pridgen's class allegations in Count IV, with prejudice. For the reasons specified below, the Court will **GRANT** Amazon's Motion to Dismiss, **DISMISS** all Counts specified *without prejudice*, and **DISMISS**

Pridgen's class allegations *with prejudice*.  For related reasons, the Court will also **DENY** Pridgen's Motion for a Preliminary Injunction.

### A.    The Court Will Dismiss Any Constructive Discharge Claim in Count I

To the extent Claim I is premised upon constructive discharge, Pridgen fails to state a claim for relief because such a claim begins to accrue only when the employee provides notice of his resignation.[8] *Green v. Brennan*, 578 U.S. 547, 564 (2016).  Because Pridgen does not contend he has actually resigned or stopped working for Amazon and there is no indication that he has notified Amazon that he intends to resign, he cannot claim constructive discharge.

Accordingly, to the extent Pridgen brings a constructive discharge claim as part of Count I, the Court will **GRANT** Amazon's Motion to Dismiss with respect to any constructive discharge claim in Count I and **DISMISS** that constructive discharge claim *without prejudice*.

### B.    The Court Will Dismiss Count II

Pridgen does not state a claim for failure to provide reasonable accommodations under the ADA.  Compl. ¶ 27–30.  To establish a failure to accommodate claim under the ADA, a plaintiff must show: (1) he was disabled within the meaning of the ADA and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have reasonably been accommodated.  *Capps v. Mondelez Glob. LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)).

According to Pridgen, Amazon failed to provide him with reasonable accommodation by refusing to reduce his assigned workload.  Compl. ¶¶ 8–9, 27–30.  But according to Pridgen's

---

[8] Pridgen brought a separate constructive discharge claim in his Amended Charge of Discrimination that was separate from his other claims. *See* D.E. 19-2 at 36.  He does not explicitly refer to constructive discharge in his Complaint.

Complaint, Amazon provided Pridgen with all "approved accommodations" including: (1) "[a] 10-hour maximum shift"; (2) "[a] 40-hour maximum workweek;" (3) "[a]n additional 60-minute break"; and (4) "[t]hree allowable intermittent absences per month." *See id.* ¶ 6. Pridgen nevertheless complains that although his shift was shortened, his workload was not commensurately reduced. *Id.* ¶ 8. Pridgen further complains that this resulted in increased pressure at work "in direct contradiction to his medically approved limits." *Id.* Pridgen's allegations are inadequate for at least two reasons.

*First*, Pridgen does not allege any facts showing that he was entitled to a reduced workload or that he was subject to any "medically approved limits" for pressure at work. He alleges that he was entitled to "reduced duties," but the only limits that Pridgen's physician imposed appear related to the duration of his shifts, breaks, and his permitted absences. *See id.* ¶¶ 8, 28.

Indeed, the Health Assessment Pridgen references in his Complaint provides no indication that Pridgen is entitled to a reduction in *workload*. If anything, the conclusions provided by Pridgen's behavioral physician indicate the opposite. Pridgen's physician explicitly specified that no limitations to Pridgen's job functions or environment were necessary.[9] *See* D.E. 19-2 at 25–26 (writing "N/A" in response to "Changes to Job Functions" and "Changes to Work Environment"). Just because Pridgen's workload may cause him stress does not mean that his disability entitles him to a reduction in workload. The ADA does not require employers to provide employees with a particular preferred or requested accommodation. *Yovtcheva v. City of Philadelphia Water*

---

[9] The record Pridgen submitted shows that Amazon addressed each limitation his physician imposed on Pridgen's ability to work. *Compare* D.E. 19-2 at 25 (Pridgen's physician specifying that Pridgen could not work more than ten hours a day, forty hours a week, that Pridgen needed an extended break each shift for up to sixty minutes, and that Pridgen should be permitted to take three intermittent days off a month), *with* Compl. ¶ 6 (alleging Pridgen returned to work subject to a ten-hour maximum shift, a forty-hour maximum work week, an hour-long break each shift, and three intermittent absences per month).

*Dep't*, 518 F. App'x 116, 122 (3d Cir. 2013) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)). Indeed, "[t]he law is clear that" even if plaintiffs are "entitled to reasonable accommodations," plaintiffs are not entitled to "the accommodation of [their] choice." *Keyhani v. Trustees of Univ. of Pa.*, No. 17-3092, 2019 WL 2568279, at *3 (E.D. Pa. June 21, 2019).

It therefore appearing that Amazon addressed all limitations provided for by Pridgen's physician, Pridgen fails to state an ADA claim for failure to accommodate. *See Hofacker v. Wells Fargo Bank Nat'l Assoc.*, 179 F. Supp. 3d 463, 470 (E.D. Pa. 2016) (dismissing ADA failure to accommodate claim in part because "Defendant addressed all the limitations that her physician placed on her").

*Second*, even if the Court could construe the limitations on Pridgen's ability to work to *implicitly* require a reduced workload, Pridgen has not described his work responsibilities with adequate specificity for the Court to determine whether his claims of disproportionate work are plausible.[10] For example, Pridgen alleges that his work responsibilities included "continuous floor presence" but it does not seem plausible that Amazon is requiring Pridgen to provide more than ten hours' worth of "continuous floor presence" in ten hours' time. *See* Compl. ¶ 9. Pridgen also claims that his work responsibilities included physical labor, documentation, and audits. *Id.* But Pridgen does not explain whether he means that he had to fill out a certain quantity of documentation or complete certain audits or whether he refers to documentation and audits that Amazon or third-party entities collected and performed on Pridgen. *See, e.g.*, *id.* ¶¶ 17 (Pridgen complaining that he was selected for "an IRS audit adding . . . documentation burdens"), 31

---

[10] Pridgen references a formal disciplinary warning that he received that was "tied directly to metrics outlined" by Amazon's work standards, Compl. ¶ 10, but Pridgen neither provides the formal disciplinary warning or a copy of Amazon's work standards in connection with either his Complaint or MTD Opposition.

11

(complaining that Amazon "punitively monitored" him). Nor does Pridgen explain what kind of labor he had to engage in. Pridgen therefore fails to state a claim for failure to provide reasonable accommodation.[11]

Accordingly, the Court will **GRANT** Amazon's Motion to Dismiss with respect to Count II and **DISMISS** Count II *without prejudice*.

### C.    The Court Will Dismiss Count III

Pridgen fails to state an ADA hostile work environment claim against Amazon. Compl. ¶¶ 31–33. To state a claim under the ADA for hostile work environment, a plaintiff must allege:

> [(1) he] is a qualified individual with a disability under the ADA; (2) [h]e was subject to unwelcome harassment; (3) the harassment was based on h[is] disability or request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action.

*Wright v. Providence Care Cntr., LLC*, 822 F. App'x 85, 95 (3d Cir. 2020) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). Courts must look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Pridgen's Complaint is devoid of any specific facts that give rise to a plausible ADA hostile work environment claim. Although *pro se* litigants are entitled to liberal construction of their pleadings, they must nevertheless comply with the Federal Rules of Civil Procedure. *Mala*, 704

---

[11] In his MTD Opposition, Pridgen argues that Amazon compelled Pridgen to work outside of his scheduled hours. MTD Opp'n at 6. These allegations, however, appear nowhere in Pridgen's Complaint and therefore cannot be considered. *See supra* n.7.

12

F.3d at 246. Here, Pridgen's conclusory allegations that he was "[p]unitively monitored; [a]rbitrarily disciplined;" and subjected to an environment that was "[e]motionally and physically unsustainable," fail to provide any notice as to what Pridgen's grounds are for his hostile work environment claim. Compl. ¶¶ 31-33. Pridgen includes one allegation that he received a formal disciplinary warning, but he does not state who provided it, when, how, what it said, or why he believes his disability motivated the warning. *Id.* ¶ 10. Pridgen's single allegation is not enough. *See, e.g.*, *Govan v. Amazon, Inc.*, No. 22-4403, 2023 WL 2025034, at *4 (E.D. Pa. Feb. 15, 2023) ("Absent any factual allegations explaining why the supporting feedback document or any alleged disciplinary action was motivated by Govan's disability, the Complaint cannot support a plausible claim under the ADA."). Count III therefore fails to even satisfy Rule 8's requirement that plaintiffs provide defendants with notice as to what grounds their claims are based on.

Accordingly, the Court will **GRANT** Amazon's Motion to Dismiss with respect to Count III and **DISMISS** Count III *without prejudice*.

### D.    The Court Will Dismiss Count IV

Pridgen seeks to bring a claim against Amazon for disparate impact discrimination under the ADA on behalf of a class. Compl. ¶ 34–37. Pridgen, however, does not state a claim for disparate impact-based discrimination under the ADA, nor can he bring a class action based on disparate impact-based discrimination under the ADA. The Court will therefore **GRANT** Amazon's Motion to Dismiss with respect to Count IV and **DISMISS** Pridgen's class allegations in Count IV *with prejudice* and the merits of his disparate impact discrimination claim brought on his own behalf in Count IV *without prejudice*.

As an initial matter, it is well established that non-attorney plaintiffs who proceed *pro se* may not serve as class representatives in a putative class action. *See, e.g.*, *Hogan v. Rogers*, 570

13

F.3d 146, 158–59 (3d Cir. 2009); *Ezekoye v. Ocwen Fed. Bank FSB*, 179 F. App'x 111, 113 (3d Cir. 2006); *Doyle v. Fla. Health Sol., Inc.*, No. 17-12231, 2018 WL 11711375, at *6 (D.N.J. Aug. 29, 2018) (collecting cases). Plaintiff proceeds *pro se* and is not an attorney. As long as Pridgen remains unrepresented, Pridgen cannot, therefore, bring a putative class action.[12] Because amendment would be futile, *see Parkell v. Doe*, No. 25-723, 2025 WL 2199988, at *1 (D. Del. Aug. 1, 2025) (dismissing *pro se* plaintiff's class allegations with prejudice because he was unrepresented), the Court will **DISMISS** Pridgen's class allegations ***with prejudice***.

Putting aside Pridgen's inability to represent a class, Pridgen cannot bring any claim for disparate impact—whether on behalf of himself or on behalf of a class—because the claim exceeds the scope of the charges of discrimination he submitted to the EEOC. The parameters of a plaintiff's discrimination case before a district court is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the [plaintiff's] charge of discrimination." *Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F. F.2d 394, 398–99 (3d Cir. 1976)). As a result, a plaintiff's failure to raise a practice or policy that causes a disparate impact in an EEOC charge of discrimination will doom any disparate impact claim later brought before the district court. *Ptasznik v. Univ. of Pa.*, 523 F. App'x 156, 160 (3d Cir. 2013).

---

[12] Pridgen nevertheless argues that "[c]ourts routinely permit pro se plaintiffs to plead class claims . . . ." MTD Opp'n at 7. Pridgen cites "*Lewis v. City of Trenton*, 2020 WL 6204330" for this proposition. *Id.* The case Pridgen cites, however, does not exist. This Court does not tolerate hallucinated citations. Litigants who use generative artificial intelligence *must* disclose such use to this Court and litigants *must* review the filings for accuracy. *See* Section I.B of the Undersigned's Judicial Preferences. This Court warns Pridgen that if future filings include hallucinated citations, this Court will strike those filings and they will not be considered. Pridgen may also be subject to other sanctions. Pridgen's citation to non-existent authority bolsters the Court's conclusion that Pridgen could not adequately represent the interests of other litigants.

14

In his Complaint, Pridgen alleges that Amazon mechanically "impose[d] identical benchmarks on all Area Managers, regardless of disability status or return-from-leave status" and that this policy "disproportionately impact[ed] employees who return from protected medical leave or hold active accommodations." Compl. ¶¶ 34–35. But absent from either of Pridgen's charges of discrimination is any reference to this policy or any other that caused (or could have caused) a disparate impact. Charge of Discrimination at 32–34; Amended Charge of Discrimination at 36–40. Pridgen only complained about: (1) Amazon's failure to enforce Pridgen's approved accommodations; (2) Amazon's assignment of work to Pridgen that was "disproportionately higher than [his] colleagues"; (3) Amazon's retaliatory conduct in response to Pridgen's complaints about his accommodations and workload; (4) Pridgen's resulting emotional distress and diminished quality of life; and (5) Amazon's unreasonable expectations of Pridgen's ability to manage a standard workload. Charge of Discrimination I at 32–34; Charge of Discrimination II at 36–40. Pridgen's complaints all concern Amazon's conduct only insofar as it *individually* impacted Pridgen. Accordingly, because Pridgen makes "no reference to allegations of other similarly situated employees being harmed by [any] polic[y]," Pridgen's disparate impact claim falls outside the scope of his charges of discrimination and is thus unexhausted.[13] *Ptasznik*, 523 F. App'x at 161.

The Court will therefore **GRANT** Amazon's Motion to Dismiss with respect to Count IV and **DISMISS** Pridgen's class allegations in Count IV *with prejudice* and the Count IV as brought on Pridgen's own behalf *without prejudice*. If Pridgen receives a notice to sue based upon a charge of discrimination that encompasses a disparate impact claim, Pridgen may replead Count IV.

---

[13] The Court reiterates that although Amazon does not contest the existence of any EEOC notice to sue, Pridgen did not attach one to his Complaint or MTD Opposition and the Court cannot determine which charge of discrimination was exhausted, if either.

**E.       The Court Will Deny Pridgen's Motion for a Preliminary Injunction**

Pridgen moves for a preliminary injunction to enjoin Amazon from causing him "further financial harm, procedural disadvantage, and ADA-based retaliation." PI Mot. at 2. To the extent Pridgen's Motion for a Preliminary Injunction seeks relief based on Counts II through IV, the Court will **DENY** that relief as moot. *See KDDI Global LLC v. Fisk Telecom LLC*, No. 17-5445, 2017 WL 5479512, at *7 (D.N.J. Nov. 15, 2017) (collecting cases dismissing motions for a preliminary injunction as moot after granting a motion to dismiss).

To the extent Pridgen's Motion for a Preliminary Injunction rests on his allegations of retaliation—which Amazon did not move to dismiss—Pridgen fails to show either a likelihood of success on the merits or irreparable harm. The Court will therefore **DENY** the Motion for a Preliminary Injunction.

### 1.       *No likelihood of success on the merits*

A prima facie claim of retaliation under the ADA requires showing that (1) a plaintiff engaged in "protected activity"; (2) the plaintiff was subjected to an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action exists. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). Pridgen argues that because he pursued EEOC action, Amazon withheld his wages. *See* PI Mot. at 3–4. But like Pridgen's Complaint, his Motion for a Preliminary Injunction is scant when it comes to detail. Pridgen provides no evidence at all that Amazon intentionally withheld his wages *in response to Pridgen's EEOC filing* or in response to any other protected activity. *See, e.g.*, *id.* at 3 (citing unattached "Exhibits D, E, F, G, H"). Pridgen's Motion for a Preliminary Injunction and Complaint instead indicate that any delay in receiving wages was attributable to non-discriminatory reasons. *See id.* (arguing that Amazon withheld wages because of Pridgen's *non-*

16

*attendance at work*); Compl. ¶ 16 (alleging that Pridgen's pay was disrupted because his second leave period was misclassified as short term disability).

Pridgen has therefore failed to show a likelihood of success on the merits of his retaliation claim. This Court accordingly finds that Pridgen is not entitled to the extraordinary relief of a preliminary injunction that he asks for.

2.      *No irreparable harm*

A preliminary injunction should not issue "unless the moving party shows that it specifically and personally risks irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009). Injuries fully compensable by monetary damages are not irreparable. *Id.* Pridgen has not shown he risks irreparable harm.

For one, Pridgen complains of lost wages but concedes that "Amazon issued Plaintiff a separate check for underpayment . . . ." PI Mot. at 4 (emphasis removed). It therefore appears that Amazon has already addressed and resolved at least some of Pridgen's lost wages.

Next, Pridgen avers that underpayment continues yet provides no evidence of what pay remains missing or for how much. On this record, the Court could not compel Amazon to pay any underpayments even if it did find that Pridgen was likely to prevail on the merits of his retaliation claim.

Finally, Pridgen must do more than simply allege he is entitled to lost pay for a preliminary injunction to issue. *Reilly*, 858 F.3d at 179 n.4 ("[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm."). In his Complaint, Pridgen contends that the lapse in pay "severely destabilized his home life, credit, and ability to pay for ongoing [medical] care." *Id.* ¶ 18. But for purposes of injunctive relief, Pridgen must prove—not just

17

allege—that absent the requested relief, he will face irreparable harm that cannot be remedied by monetary damages. *Reilly*, 858 F.3d at 179 n.4. Pridgen, however, makes no such showing.

Because Pridgen's Motion for a Preliminary Injunction does not satisfy either of the first two factors needed for a preliminary injunction to issue, the Court will **DENY** Pridgen's Motion for a Preliminary Injunction. *Reilly*, 858 F.3d at 176.

## IV.    CONCLUSION

Having determined that Pridgen does not state a claim for relief under Count I for constructive discharge or under Counts II, III, or IV at all, the Court will **GRANT** Amazon's Motion to Dismiss and **DISMISS** part of Count I (to the extent it includes a constructive discharge claim), and all of Counts II, III, and IV. The Court will specifically **DISMISS** Pridgen's class allegations based on Count IV *with prejudice* and will **DISMISS** Counts II, III, and IV as it is brought on Pridgen's behalf *without prejudice*. And because Pridgen: (1) pleads no plausible claim for relief based on constructive discharge or based on Counts II, III, or IV; and (2) fails to show either a likelihood of success on the merits of Count I or irreparable harm, the Court will **DENY** Pridgen's Motion for a Preliminary Injunction.

Dated: March 16, 2026

_____
Evelyn Padin, U.S.D.J.

18